*Formatted for Electronic Distribution*                                                  *Not for Publication*

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF VERMONT

Filed & Entered
On Docket
09/27/2019

_____

**In re:**
    **Matthew C. Abel,**
          **Debtor.**

Chapter 13
Case # 19-10010

_____

**In re:**
    **William K. Harrington, U.S. Trustee,**
           **Plaintiff,**
        **vs.**
**Synergy Law, LLC, Synergy Attorney**
**Services, LLC, Sheldon M. Katz, Esq.,**
**Scott Marinelli, Dave Maresca,**
**Monica Chapman, Stephanie Turk,**
**Georgia Myers, and Terrylle Blackstone,**
           **Defendants.**

Adversary Proceeding
# 19-01003

_____

<u>Attorney appearances</u>: Amy Ginsberg, Esq.        Sheldon M. Katz, Esq.
                          Office of the U.S. Trustee       South Burlington, Vermont
                          Albany, New York               For Defendant Katz, <u>pro se</u>
                          For the Plaintiff

## <u>MEMORANDUM OF DECISION</u>
### G<small>RANTING</small> J<small>UDGMENT IN</small> F<small>AVOR OF THE</small> U.S. T<small>RUSTEE AND</small> A<small>GAINST</small> S<small>HELDON</small> M. K<small>ATZ</small>

     In this adversary proceeding, the Court has before it a defendant who admits essentially all of the allegations against him in the complaint and requests the Court enter judgment against him, in the form of such sanctions as the Court deems appropriate in light of his conduct in the role of the Debtor's attorney. For the reasons stated below, the Court grants judgment to the Plaintiff, against Defendant Sheldon M. Katz, Esq., and, as a sanction, directs Defendant Katz to render 10 hours of *pro bono* legal service, attend 8 hours of continuing legal education focused on legal ethics, and file a certificate he has completed both by December 31, 2020.

## I. JURISDICTION

The Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 157 and 1334, and the Amended Order of Reference entered on June 22, 2012. The Court declares the complaint and responsive pleading create a core proceeding for purposes of 28 U.S.C. § 157(b)(2)(A), over which this Court has constitutional authority to enter a final judgment.

## II. PROCEDURAL HISTORY

On April 15, 2019, the U.S. trustee commenced this adversary proceeding (the "A.P.") seeing judgments (a) against Synergy Law, Synergy Attorney Services, and several of its principals and employees (together, the "Synergy Defendants"), for their conduct, primarily as undisclosed bankruptcy petition preparers, in the bankruptcy case of Matthew C. Abel (the "Abel Case"), and (b) against Sheldon M. Katz, Esq., for his related misconduct in the Abel Case. The Complaint alleges Attorney Katz worked with, and assisted the Synergy Defendants in their improper conduct associated with the filing of Mr. Abel's bankruptcy case, by, among other things, allowing his name and electronic signature to be affixed to the petition and schedules, creating the impression that he represented Mr. Abel in this chapter 7 case, and failing to properly review the documents that were filed with his electronic signature (A.P. doc. # 1, the "Complaint").[1] In particular, based on its deposition of Attorney Katz and the record in this case, the U.S. trustee alleges Attorney Katz:

(i) never reviewed the Debtor's petition or creditor matrix, nor saw the Debtor sign them, before those documents were filed, on January 9, 2019, with his signature on them;

(ii) Attorney Katz did not prepare or supervise the preparation of any of those documents before they were filed with his signature on them;

(iii) allowed the Synergy Defendants to use his electronic signature, in the form of his CM-ECF login, when they filed this case;

(iv) filed a motion to impose stay, asserting the Debtor had filed this bankruptcy case in good faith without reviewing the documentation support of the Debtor's assertion that he was filing this, his third, bankruptcy case, in less than six (6) months, in good faith;

(v) never reviewed the records of the Debtor's two prior bankruptcy cases (filed in the U.S. Bankruptcy Court for the District of Connecticut), to determine whether the matrix the Debtor filed in this case was complete, before it was filed with Attorney Katz's signature on it;

(vi) did not communicate with the Debtor, at all, until January 21, 2019, more than 10 days after

---

[1] With regard to the Synergy Defendants, the U.S. trustee seeks (i) disgorgement of all fees collected by Synergy Law; (ii) statutory fines and penalties for violations of 11 U.S.C. §§ 110, 526, and 528, stemming from Synergy Law's alleged infractions as a debt relief agency and bankruptcy petition preparer and its willful failure to disclose its role to the Court, creditors, and other parties; and (iii) the enjoining of Synergy Law, and the other named defendants, from acting as debt relief agencies or bankruptcy petition preparers in the future.

2

the Debtor's bankruptcy case had been commenced, and then only by email;

(vii) did not meet with the Debtor, in person, until February 8, 2019, one month after the case was filed with Attorney Katz's signature, at the hearing on this Court's order to show cause;

(viii) allowed an Attorney's Statement of Disclosure of Compensation to be filed, with his signature, which Attorney Katz did not review prior to its filing, and which inaccurately stated the Debtor had agreed to pay Attorney Katz $3,500 for legal services associated with the bankruptcy case and had paid Attorney Katz $1,000 prior to the filing of the case; and

(ix) contrary to that Disclosure of Compensation Statement, Attorney Katz represented in his motion to withdraw as the Debtor's attorney (doc. # 13) that "the Debtor ha[d] paid no fee to [him]".

Complaint ¶¶ 34–49, 51–55.[2]

On May 11, 2019, Attorney Katz filed a pleading in response to the Complaint, which he entered on the docket in this proceeding as "Defendant's Motion to Dismiss Case and to Impose Sanctions" (A.P. doc. # 9, the "Motion to Dismiss"). This pleading is, however, markedly different from the typical motion to dismiss filed in response to a complaint in federal practice. Rather than asking to have the action dismissed against him as a defendant, without liability, it admits all of the allegations of the Complaint which relate to the Abel case,[3] and asks the Court to enter a judgment imposing sanctions against him, without further pleadings, discovery, or trial, in order to bring this litigation against him to conclusion.[4] The Court construes this pleading as a motion for judgment on the pleadings, pursuant Fed. R. Civ. P. 12(c), as incorporated into adversary proceeding procedures via Bankruptcy Rule 7012.

The Plaintiff filed no response to the Motion to Dismiss, so the matter is fully submitted.

### III. LEGAL ISSUE PRESENTED

The legal issue presented is whether, to what extent, and how Attorney Katz should be sanctioned for his failure to comply with the Bankruptcy Code, Bankruptcy Rules, and this Court's Local Rules with respect to his representation of the Debtor and filing of documents in the Abel Case.

---

[2] It is undisputed that the Synergy Defendants, individually and/or together, (1) prepared and filed the petition, schedules, statements and mailing matrix in this bankruptcy case, though it assured the Debtor that Attorney Katz represented him in this case, and (2) did so without disclosing they were bankruptcy petition preparers and without complying with their obligations under the Bankruptcy Code. Bankruptcy Rules, and Local Rules. After due notice, and a hearing, the Court has granted the U.S. trustee Plaintiff a default judgment against the Synergy Defendants.

[3] The only allegation of the Complaint Attorney Katz disputes is paragraph 64. It asserts Attorney Katz was "also involved in another [bankruptcy case] pending in this District" in which the debtor was harmed by the misconduct of the Synergy Defendants, i.e., Chrystal Bennett (ch 13 case # 18-10346). Attorney Katz asserts he never represented Ms. Bennett.

[4] At the hearing held on May 24, 2019, Attorney Katz acknowledged this was precisely the goal of his Motion to Dismiss and the Plaintiff indicated he had no objection to the Court treating it that way, and waived his right to respond or otherwise be heard with regard to the form or scope of sanctions the Court would impose, based on the allegations in the Complaint.

3

## IV. ADMITTED MATERIAL FACTS

In the Motion to Dismiss, Attorney Katz admits all of the allegations of the Complaint relating to the Abel Case. He offers the following admissions in response to the Complaint's allegations:

1. Attorney Katz did not personally sign the voluntary petition.

2. Prior to the filing, Attorney Katz did not witness the Debtor personally sign either the voluntary petition or the verification of creditor matrix.

3. Prior to the filing, Attorney Katz did not possess the voluntary petition or verification of creditor matrix personally signed by the Debtor.

4. Attorney Katz did not prepare, or supervise the preparation of, any of the documents filed as doc. # 1 in the Abel Case.

5. Attorney Katz did not review the documentation supporting the information set out in any of the documents filed at doc. # 1 in the Abel Case.

6. The documents filed as doc. # 1 in the Abel Case were prepared by Synergy Law employees at Synergy Law's place of business.

7. Ms. Chapman [of Synergy Law] filed all of the documents that comprise doc. # 1 in the Abel Case, using Attorney Katz's CM/ECF log-in credentials.

8. Attorney Katz drafted and filed the Debtor's motion to impose stay alleging the Debtor had filed this case in good faith but Attorney Katz did not review the documentation supporting the Debtor's assertion of good faith and did not review the records in either of the Debtor's two prior bankruptcy cases.

9. Attorney Katz's first communication with the Debtor was by email on January 21, 2019.

10. Attorney Katz did not meet the Debtor in person until February 8, 2019.

11. Attorney Katz signed the Rule 2016(b) disclosure of compensation stating the Debtor agreed to pay him $3,500 in connection with this bankruptcy case and that he had received $1,000 of that sum.

12. In the motion to voluntarily dismiss the Debtor's case, Attorney Katz represented to the Court that the Debtor paid Synergy Law a total of $250 and paid no further sums to Synergy Law nor any other attorney in connection with this case.

Motion to Dismiss, pp. 1–2. To explain how and why he agreed to work with the Synergy Defendants in representing the Debtor, Attorney Katz also admits the following facts. Since the Plaintiff has not responded to them, the Court treats them as undisputed and material to the instant legal issue, as well:

13. Notwithstanding his lack of experience in representing debtors, Attorney Katz allowed his relationship with the Debtor, through the Synergy Defendants, to evolve into a general appearance. Motion to Dismiss ¶¶ 27–30.

14. Attorney Katz was not aware of his obligations as a debtor's attorney, failed to research what those obligations were, failed to verify Synergy Law's representations regarding the Debtor and the circumstances surrounding his need for a bankruptcy filing, failed to independently and thoroughly

investigate either Mr. Marinelli, Synergy Law, or the Debtor, and failed to meet his obligations, under the Bankruptcy Code and Rules, as a debtor's attorney in this case. Motion to Dismiss ¶ 35.

15. Attorney Katz admits even his review of documents in this case was sloppy and that he did not correct the incorrect addresses on the documents he filed. Motion to Dismiss ¶ 39.

16. As the time for filing the Debtor's schedules drew closer, Attorney Katz realized the Debtor's circumstances were not documented and even the undocumented circumstances would not be sufficient to support confirmation of a chapter 13 plan. Motion to Dismiss ¶ 40.

17. Attorney Katz drafted, and the Debtor signed, a motion for voluntary dismissal well before the February 8, 2019 hearing, however, Synergy instructed him to not to file it at that time. Had he sought dismissal on behalf of the Debtor at that time, the damage to the Debtor might have been mitigated. Motion to Dismiss ¶ 41.

Attorney Katz also admits that his conduct in this case "may have enabled other wrongful conduct," and based on that admission, requests that this Court impose such "monetary and injunctive sanctions" against him as it deems appropriate, and dismiss him from the case. Motion to Dismiss pp. 1, 14.

## V. DISCUSSION

### A. FACTORS TO BE CONSIDERED

This Court has the authority and duty to regulate the practice of attorneys who come before it, and to sanction the type of attorney misconduct demonstrated in this case, under both §§ 707(b)(4) and 105 of the Bankruptcy Code, see Chambers v. NASCO, Inc., 501 U.S. 32, 44 (1991);see also In re Nguyen, 447 BR 268, 281–82 (B.A.P. 9th Cir. 2011), and in assessing what sanctions are appropriate here, the Court exercises its discretion to consider all salient factors of the case.

> The Court must exercise its discretion to determine the nature of the appropriate sanction. Possible sanctions include an award of attorney's fees, but they can also include a range of other actions, from reprimand to disbarment. Generally, the Court should award the minimum sanction necessary to deter future sanctionable conduct. The Court may also consider, inter alia, the reasonableness of costs and expenses incurred by the party seeking sanctions, prejudice suffered by the party seeking sanctions, the relative culpability of client and counsel, the degree to which the party seeking sanctions caused the expenses for which recovery is sought, whether the sanctionable conduct was a conscious disregard of duty, and the general reputation of the individual to be sanctioned.

In re Parikh, 508 B.R. 572, 595 (Bankr. E.D.N.Y. 2014) (internal citations omitted). The Court examines the unique facts and circumstances pertinent to Attorney Katz's conduct, as a response to the allegations of the UST's Complaint, to determine if sanctions are warranted. If so, it will decide what type and scope of sanctions are appropriate, with guidance from the American Bar Association's Model Rules:

> Factors to be Considered in Imposing Sanctions. In imposing a sanction after a finding of lawyer misconduct, the court or board shall consider the following

factors, as enumerated in the ABA Standards for Imposing Lawyer Sanctions.
(1) whether the lawyer has violated a duty owed to a client, to the public, to the legal system, or to the profession;
(2) whether the lawyer acted intentionally, knowingly, or negligently;
(3) the amount of the actual or potential injury caused by the lawyer's misconduct; and
(4) the existence of any aggravating or mitigating factors.

ABA Model Rules for Lawyer Disciplinary Enforcement, Rule 10C (2017).

*(1) VIOLATION OF DUTY TO THE CLIENT AND THE LEGAL SYSTEM*

(i) Duty to the Client: Relief under 11 U.S.C. § 329

The first question the Court must address is whether Attorney Katz violated a duty to the Debtor. This corresponds to the U.S. trustee's prayer for relief under § 329 of the Bankruptcy Code, in which he asks this Court to examine "the Debtor's transactions with Attorney Katz," pursuant to this Court's authority to review all fees debtors pay to attorneys in connection with a bankruptcy case. That statute grants bankruptcy courts broad authority to (a) require disclosure of all fees paid in connection with a bankruptcy case, at any time within one year of when the case was filed, (b) examine the reasonableness of all such fees, and (c) direct disgorgement of any fee the debtor paid that the court determines to be unreasonable, regardless of the source of the payment. See In re Walters, 868 F.2d 665, 668 (4th Cir. 1989) (citing In re Furniture Corp. of America, 34 B.R. 46 (Bankr. S.D. Fla. 1983)). It states:

> **Debtor's transactions with attorneys.**
> (a) Any attorney representing a debtor in a case under [the Bankruptcy Code], or in connection with such a case, <u>whether or not such attorney applies for compensation under this title</u>, shall file with the court a statement of the compensation paid or agreed to be paid, if such payment or agreement was made after one year before the date of the filing of the petition, for services rendered or to be rendered in contemplation of or in connection with the case by such attorney, and the source of such compensation.
> (b) If such compensation exceeds the reasonable value of any such services, the court may cancel any such agreement, or order the return of any such payment, to the extent excessive, to—
>     (1) the estate, if the property transferred—
>         (A) would have been property of the estate; or
>         (B) was to be paid by or on behalf of the debtor under a plan under chapter 11, 12, or 13 of this title; or
>     (2) the entity that made such payment.

11 U.S.C. § 329 (emphasis added). Ultimately, since Attorney Katz affirms, and the Court finds, the Debtor did not pay any fees to Attorney Katz, there are no fees which this Court can order him to disgorge. That does not, however, end the § 329 inquiry. The Court must also address the question of

6

Attorney Katz's transactions with the Debtor with respect to his duty to fully and accurately disclose payment of attorney's fees in this case.

Attorney Katz acknowledges the errors in the Statement Disclosing Attorney Compensation that was filed in the Abel Case. He admits he did not read that Statement before it was filed, admits the document was inaccurate with regard to the attorney's fees Mr. Abel agreed to pay in general, i.e., to the Synergy Defendants, and admits the document was "definitely inaccurate" both with regard to the fees Attorney Katz agreed to accept from the Debtor and the amount of the fees the Debtor had actually paid to Attorney Katz. On this latter point, Attorney Katz asserts he had no fee arrangement with the Debtor and the Debtor did not pay him any compensation. Therefore, the representation, made under penalty of perjury, on that form, to wit, that the Debtor agreed to pay Attorney Katz $3,500, paid Attorney Katz $1,000 prior to the petition date, and owed Attorney Katz $2,500 as of the petition date, were all false.

This Court carefully examines fees debtors pay to their counsel because individuals who seek bankruptcy relief are frequently suffering significant financial and emotional distress when they contact a bankruptcy attorney. Congress recognized the need to protect this group of potential consumers of legal services and incorporated those protections in the Bankruptcy Code. "Payments to a debtor's attorney provide serious potential for evasion of creditor protection provisions of the bankruptcy laws, and serious potential for overreaching by the debtor's attorney, and should be subject to careful scrutiny." H.R.Rep. No. 595, 95th Cong., 1st Sess. 329, reprinted in 1978 U.S. Code Cong. & Ad.News 5963, 6285; S.Rep. No. 989, 95th Cong., 2d Sess. 39, reprinted in 1978 U.S. Code Cong. & Ad.News 5787, 5825. This Court has observed the special nature of the attorney-client relationship in bankruptcy cases, and its duty to scrutinize any transactions that appear suspect or fail to comply, to the letter, with the requirements of the fee disclosure statute and rules:

> Ensuring that the relationship between a debtor and his or her attorney is fair is one of the primary duties the bankruptcy courts must perform in their capacity as guardians of the integrity of the bankruptcy system. Clients seeking bankruptcy advice are frequently in particularly vulnerable situations, where they have both a desperate need for immediate financial relief and very little understanding of the complexities of bankruptcy law. Therefore, court review of transactions between debtors and their attorneys require sensitivity to these vulnerability factors, acknowledgment of the very different bargaining position of each party in the professional relationship, and a heightened level of scrutiny. See In re Wood, 210 U.S. 246, 28 S.Ct. 621 (1908); Fed. R. Bankr. P. 2017, eds.' cmt. ("It has long been recognized that, consistent with the overall policy of any bankruptcy legislation, there shall be a provision for examining all transactions of a debtor involved in bankruptcy, including transactions of a debtor with an attorney.").

In re Williams, No. 03-10344, 2003 WL 22722841, at *3 (Bankr. D. Vt. Nov. 18, 2003). It has also held that, pursuant to the Second Circuit's rulings, the consequences of failing to fully and accurately disclose all fees can be severe:

> The purpose for the Bankruptcy Code's broad and stringent disclosure requirements are clear: "Anything less than the full measure of disclosure leaves counsel at risk that all compensation may be denied.... The court may exercise its discretion to deny or reduce fees for counsel's failure to disclose its fee arrangements *whether or not actual harm* accrues to the estate.... Whatever the explanation for disclosure inadequacies, it reflects poorly on responsible counsel; ...; and the resulting potential for frustration of the Code's policy of thorough scrutiny is unacceptable...." Cohn v. U.S. Trustee (In re Ostas), 158 B.R. 312, 321 (N.D.N.Y. 1993) … This stringent standard has been adhered to by the Second Circuit for almost three-quarters of a century. See, e.g., Kero–Sun, 58 B.R. at 780 (referring to Stratton, the 1931 Second Circuit case, as the "seminal case" regarding violations of disclosure requirements).

In re Laferriere, 286 B.R. 520, 526 (Bankr. D. Vt. 2002).

(ii) <u>Duty to the Public and Legal System: Relief under Bankruptcy Rule 9011 and 11 U.S.C. § 707</u>

The U.S. trustee asserts Attorney Katz committed "numerous violations of the Bankruptcy Code, Federal Rules of Bankruptcy Procedure, and Vermont Local Bankruptcy Rules" which represent a violation of his duty to the legal system and this Court. The U.S. trustee points to Attorney Katz's violation of Vt. LBR 9011-4, which requires "all documents, motions, pleadings, and other papers submitted for filing must be signed by an attorney of record in the attorney's own name," asserting Attorney Katz filed all of the initial case filing documents, the motion to impose the automatic stay, and the motion to extend time (case # 19-10010, doc. ## 1, 3–5) without reviewing or signing any of them before they were filed with his electronic signature, and after authorizing another individual, who turned out not to be an attorney, to affix his signature to those documents (Complaint ¶¶ 84-87). Attorney Katz does not dispute any of these allegations.

*(2) WHETHER THE CONDUCT WAS INTENTIONAL*

Attorney Katz argues his misconduct in this case was negligent rather than intentional. The U.S. trustee responded to this contention at the May 24, 2019 hearing, and urged the Court to find that in allowing a party to file using his CM/ECF credentials Attorney Katz's misconduct was "more than negligent [though] not quite intentional." The UST's attorney characterized Attorney Katz's sharing of CM/ECF credentials as "relinquishing your authority and your control of what is filed with the Court ... akin to giving somebody your signature stamp." (audio recording of hearing at doc. # 12 at 14.36). This description is apt, and the UST's conclusion that the nature of the misconduct at issue is less than

8

intentional is likewise sound. "'Intentional' torts, as distinguished from negligent or reckless torts, generally require that actor intended the consequences of an act, not simply the act itself." Kawaauhau v. Geiger, 523 U.S. 57, 61,118 S. Ct. 974, 977, 140 L. Ed. 2d 90, 95 (1998), citing Restatement (Second) of Torts § 8A comment a, p. 15 (1964).

The record supports Attorney Katz's representation that he never intended to harm the Debtor or undermine the bankruptcy system. There is nothing in the Complaint or Attorney Katz's many admissions that shows, or even suggests, he intended to hurt the Debtor when he failed to comply with the requirements of the Bankruptcy Code, or when he authorized one or more of the Synergy Defendants to use his CM/ECF credentials to "sign" bankruptcy case documents for filing, in his name. On the contrary, Attorney Katz has persuasively confessed that his failure to comply with the Bankruptcy Code was due solely to inexperience and lack of expertise in this area of the law, and his decision to grant the Synergy parties access to his CM/ECF credentials was a grave mistake and lapse of judgment on his part. The Court finds that admission wholly credible and sincere, and acknowledges the candor, humility, and deep remorse with which Attorney Katz delivered that confession. This apparent lack of appreciation for the significance of an attorney's signature on court-filed documents, see Fed. R. Bankr. P. 9011 is troubling, but the Court finds nothing to support a determination that Attorney Katz's misconduct is properly characterized as intentional. This finding that Attorney Katz's misconduct was not intentional carries substantial weight in the determination what sanctions should be imposed here.

### *(3) AMOUNT OF ACTUAL DAMAGE CAUSED BY THE MISCONDUCT*

Attorney Katz asserts any actual harm to the Debtor was not serious. He tempers this with the acknowledgement that if he had filed the motion to voluntarily dismiss the case sooner, the Debtor might not have suffered the imposition of an 18-month filing bar (Motion to Dismiss ¶ 42), and points out that there was a real potential for harm as a result of his failure to obtain an order imposing the automatic stay in this case, since creditors could have resumed collection activities (even while the case was pending) (Motion to Dismiss ¶ 20). Additionally the record is silent on the question of whether this filing had a negative impact on the Debtor's credit history (and it is rather complicated to discern since the Debtor had filed two recent prior bankruptcy cases(s) in the District of Connecticut – see case # 19-10010, doc. # 31). The Plaintiff has not identified any particular damage Attorney Katz's misconduct caused to the Debtor, nor specified how consideration of this factor should affect the nature or magnitude of the sanction to be imposed. Since the record is undeveloped on the extent and nature of any harm Attorney Katz's conduct caused the Debtor, the Court gives this factor little weight.

There is also the question of the extent of damage Attorney Katz caused to the legal system, this Court, or the practice of law in this District. The circumstances presented in this case are sufficiently unique, and the nature of the bankruptcy bar as highly specialized and small, persuade the Court it is unlikely this particular misconduct will have any measurable impact on the broader level of practice, or this Court. Therefore, this inquiry will play no role in the calculation of sanctions.

*(4) MITIGATING FACTORS*

Attorney Katz recognizes the role mitigating factors play in the determination of sanctions and asks the Court to consider the following facts and circumstances, as mitigating factors:

a. In the motion to withdraw, Attorney Katz stated that the Debtor had paid him no fee, which was true, and the Debtor later attested that statement was true then and is still true. Complaint ¶ 49.

b. In his practice, Attorney Katz has been involved in many areas of law, and several years ago, on behalf of mortgage lenders, Attorney Katz practiced in Bankruptcy Court, filing proofs of claims and motions for relief. He has also been involved in hundreds of foreclosure mediations, mostly representing lenders but also as a mediator. In light of this experience, Attorney Katz thought he could provide value in this area with Synergy Law's supposed expertise in representing debtors (though he now believes he was wrong on that latter point). Motion to Dismiss ¶ 29.

c. Attorney Katz did not and does not hold himself out as a debtor attorney and, if Synergy Law had not contacted him, he would not have become involved in this case. He only took on this case because he thought he could be helpful to Mr. Abel and learn through the experience. Motion to Dismiss ¶ 30.

d. When Attorney Marinelli of Synergy Law contacted Attorney Katz, Attorney Katz stated he did not want to enter a general appearance because he had no experience in representing debtors in bankruptcy cases. Attorney Katz suggested to Synergy that rather than retain him, Synergy should assist the client to file *pro se.* He also suggested that one of Synergy Law's lawyers appear *pro hac vice.* Synergy's Attorney Marinelli insisted that a Vermont attorney was necessary from the outset as "of counsel" to the Synergy law firm and sent Attorney Katz a proposed "of counsel agreement," which Attorney Katz did not sign. Motion to Dismiss ¶ 31.

e. Attorney Marinelli represented to Attorney Katz that (a) the Debtor's situation was urgent, (b) his law firm had expertise in drafting bankruptcy petitions and other required documents, (c) it could help Attorney Katz navigate the process, and (d) Attorney Katz's involvement would be limited to the initial phase of the case. Based on these representations, Attorney Katz agreed to represent the Debtor in that limited role. Attorney Katz understood that post-petition his involvement would be confined to an event-by-event *ad hoc* basis subject to mutual agreement. Motion to Dismiss ¶ 31.

f. Given the seeming urgency – an imminent foreclosure sale – and Attorney Marinelli's description of the Debtor's dire circumstances, his law firm's ability to help, and the limited nature of the engagement, Attorney Katz accepted the role Synergy had offered. Motion to Dismiss ¶ 33.

g. When Attorney Katz assented to Synergy Law's request to take the first step toward a bankruptcy filing for the Debtor, he expected Synergy Law would file the required documents and was surprised when it requested Attorney Katz's CM/ECF filing credentials to do so. Motion to Dismiss ¶ 36.

h. When Synergy Law "disengaged" from the Debtor, the Debtor asked Attorney Katz to continue to represent him. Attorney Katz told the Debtor he would be better served with an experienced bankruptcy lawyer. The Debtor agreed and Attorney Katz began helping the Debtor to retain substitute counsel. Motion to Dismiss ¶ 40.

i. Attorney Katz received no payment of fees for service from either the Debtor or Synergy Law, expects none, and will not seek any payment for either. Motion to Dismiss ¶ 44.

Aligned with these representations, and as a further mitigating consideration, the injunctive relief Attorney Katz describes in his prayer for relief includes prohibiting him from representing debtors in the District of Vermont.

Attorney Katz asserts that lack of actual damage caused by his misconduct, as well as the nature of his misconduct being less than intentional should weigh heavily on the mitigating side of the ledger. The Court has addressed those two factors above, finds Attorney Katz's arguments on those points to be persuasive, and therefore treats them as grounds to impose a lighter rather than heavier sanction.

Additionally, Attorney Katz points to five other factors he urges the Court to treat as mitigating the impact of his misconduct, for purposes of determining the appropriate sanction.

First, he argues the emergency nature of the Debtor's request for assistance constitutes a mitigating factor. Attorney Katz's in-person representations in the courtroom, as well as the averments he presented in his Motion to Dismiss, establish he was motivated to accede to Synergy's request that he represent the Debtor primarily because of the dire circumstances in which Mr. Abel found himself, the fact that they seemed to arise primarily from an imminent foreclosure, and he had expertise in this area. He also relied on the Synergy Defendants' representations that this was to be "a limited engagement," and one or more of the Synergy Defendants had significant bankruptcy expertise, and would only "file [documents] through him." Motion to Dismiss ¶ 38.

The record in this case supports a finding that Attorney Katz agreed to assist Synergy – and to assist the Debtor – precisely because it was an emergency situation. This is a strong argument. "In an emergency a lawyer may give advice or assistance in a matter in which the lawyer does not have the skill ordinarily required where referral to or consultation or association with another lawyer would be impractical." Vermont Rules of Prof. Conduct r. 1.1 cmt. 3 (2019). That comment continues, to emphasize the importance of limiting representation under these circumstances: "Even in an emergency, however, assistance should be limited to that reasonably necessary in the circumstances, for ill-considered action under emergency conditions can jeopardize the client's interest." Id. Attorney Katz complied with that guidance by seeking to withdraw and, as described below, to persuade the Debtor to

11

hire new counsel. In light of the facts of this case and Attorney Katz's attempts at remediation, the Court finds the emergency nature of the situation is a significant mitigating factor.

Second, Attorney Katz maintains that the Synergy Defendants persuaded him the individual with whom he was communicating at Synergy was an attorney, and the Synergy website supported that misstatement. This argument has merit.

Third, Attorney Katz implores the Court to treat his lack of a prior disciplinary record as an important mitigating consideration. The Court does so.

Fourth, Attorney Katz declares his immediate, voluntary step of changing his log-in information and password on his CM/ECF account promptly after the U.S. trustee brought the instant issues to his attention and, when the magnitude of these issues became apparent, is a mitigating consideration. The record shows he requested the Clerk of the Court to close his CM/ECF account (subject to his right to reactivate it at some point in the future so that he may represent creditors – not debtors – in this Court). While this modification of his log-in credentials terminated the Synergy Defendants' access to his account, and that was positive, the Court could have deprived the Synergy Defendants, Attorney Katz, or any attorney access to CM/ECF accounts, without Attorney's Katz's affirmative action to change his credentials. The Court will consider this to be an element of the remedial action he took, as part of the final proposed mitigating factor, but does not find this step, alone, to rise to the level of warranting a reduction in the level of discipline or sanction this Court should impose.

The final mitigating factor Attorney Katz identifies is his good faith effort to rectify the mistakes he made in this case. The record reflects that in addition to changing his CM/ECF credentials to deprive others from accessing his account, he engaged in multiple steps to make amends for the misconduct in which he – alone and in concert with Synergy – engaged, including (i) offering to withdraw from representing the Debtor so the Debtor could retain competent, experienced debtor counsel, (ii) refusing to file schedules or statements in the bankruptcy case until the Debtor gave him sufficient information to fully and accurately complete those documents, and (iii) cooperating with the U.S. trustee in investigating the conduct and misconduct of the Synergy Defendants. Additionally, and critically, as soon as this matter was before the Court, Attorney Katz immediately acknowledged he had engaged in substandard practice, admitted he had exercised poor judgment and made bad decisions in his interactions with the Synergy Defendants, and sincerely apologized to the Court and all parties.

Attorney Katz also posits there are no aggravating circumstances applicable to this examination of his conduct in this case since he has had no prior disciplinary offenses and has never engaged in

12

similar violations in any other matter pending in this Court. Moreover, contrary to earlier U.S. trustee representations, he never had any other relationship with the Synergy Defendants with respect to any other cases and, in fact, never represented any other debtors in this Court. Motion to Dismiss ¶ 21.

In an effort to demonstrate his diligence, and to assist the Court in fashioning the proper sanction in this matter, Attorney Katz included summaries of an extensive list of cases in which courts have imposed sanctions on attorneys for substandard performance. While this is of some value, ultimately, this Court must determine the appropriate sanction for Attorney Katz's handling of this case, based on the unique facts and circumstances presented, and be both severe enough to punish the actual misconduct but not more onerous than is necessary to deter similar conduct in the future. This Court has addressed this question and consistently stresses the importance of the actual facts and circumstances presented.

> In determining the appropriate type and amount of sanction, the court exercises its discretion and examines the particular facts of the case, including whether any unusual difficulties existed. See *32 In re East Hill Mfg. Corp., No. 97-11884, 2001 WL 34808428, at *5 (Bankr. D. Vt. Jan. 25, 2001) ("unusual difficulties" attorneys faced in practicing before four different bankruptcy judges in one year – judges who had different styles and conflicting perspectives on enforcing disclosure requirements – warranted court's use of its equitable powers to allow attorney's fees, despite attorneys' failure to comply with mandatory disclosure requirements). Additionally, the sanction should be carefully tailored to be sufficient to punish the misconduct but no more than is reasonably necessary to deter the culpable conduct. See Vasbinder v. Scott, 976 F.2d 118 (2d Cir. 1992).

In re Frye, 570 B.R. 21, 31–32 (Bankr. D. Vt. 2017).

> Bankruptcy courts have extensive discretion under § 105 to determine what amount of sanctions is appropriate and reasonable. Courts must give individualized consideration to the particular circumstances of the case, balance a myriad of factors, and very intentionally calculate the amount of the sanction to ensure it is no more than is reasonably necessary to deter the culpable conduct. There is no formula for this computation and no defined checklist of factors to include in the analysis.

In re Gravel, et al., 556 BR 561, 576 (Bankr. Vt., 2016)(citations omitted), vacated and remanded for a reformulation of the sanctions, 2017 WL 6999820 (D. Vt. 2017).

### B. SANCTIONS TO BE IMPOSED

For the reasons set forth above, the Court has found Attorney Katz violated his duties as an attorney, to both his client and the bankruptcy system. Therefore, sanctions are warranted on this basis.

The record does not indicate, however, that Attorney Katz acted in bad faith nor that he intended to cause harm. Moreover, the single most egregious error he committed, namely allowing another party

to use his CM/ECF credentials, was a judgment error – without any indicia of intention to harm the Debtor or of bad faith in general. Therefore, the Court relies primarily on the Bankruptcy Code provision that focuses squarely on the duties of an attorney representing a consumer debtor, with respect to the attorney's duties to the Court, and the significance on the attorney's signature on documents filed in a consumer bankruptcy case, to determine what sanctions are most appropriate in light of Attorney Katz's failure to meet his Rule 9011 duties in this particular case, under the unique facts and circumstances presented.

Bankruptcy Code § 707(b)(4) imposes on every debtor's attorney the duty to review schedules, statements, and other documents filed in a consumer bankruptcy case and authorizes a bankruptcy court, either on its own motion or on the motion of a party in interest to impose sanctions on that attorney if it finds the attorney failed to meet their Rule 9011 obligations:

> (4) (A) The court, on its own initiative or on the motion of a party in interest, in accordance with the procedures described in rule 9011 of the Federal Rules of Bankruptcy Procedure, may order the attorney for the debtor to reimburse the trustee for all reasonable costs in prosecuting a motion filed under section 707(b), including reasonable attorneys' fees, if—
>   (i) a trustee files a motion for dismissal or conversion under this subsection; and
>   (ii) the court—
>     (I) grants such motion; and
>     (II) finds that the action of the attorney for the debtor in filing a case under this chapter violated rule 9011 of the Federal Rules of Bankruptcy Procedure.
> (B) If the court finds that the attorney for the debtor violated rule 9011 of the Federal Rules of Bankruptcy Procedure, the court, on its own initiative or on the motion of a party in interest, in accordance with such procedures, may order—
>   (i) the assessment of an appropriate civil penalty against the attorney for the debtor; and
>   (ii) the payment of such civil penalty to the trustee, the United States trustee (or the bankruptcy administrator, if any).
> (C) The signature of an attorney on a petition, pleading, or written motion shall constitute a certification that the attorney has—
>   (i) performed a reasonable investigation into the circumstances that gave rise to the petition, pleading, or written motion; and
>   (ii) determined that the petition, pleading, or written motion—
>     (I) is well grounded in fact; and
>     (II) is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law and does not constitute an abuse under paragraph (1).

> (D) The signature of an attorney on the petition shall constitute a certification that the attorney has no knowledge after an inquiry that the information in the schedules filed with such petition is incorrect.

11 U.S.C. § 704(b)(4) (emphasis added). "Rule 9011, now enhanced by the BAPCPA additions to the Code, evinces a policy that a debtor's attorney exercise independent diligence and care in ensuring that there is evidentiary support for the information contained in his client's bankruptcy schedules." In re Beinhauer, 570 B.R. 128, 143 (Bankr. E.D.N.Y. 2017) (internal citations omitted).

An attorney has an "affirmative duty to conduct a reasonable inquiry into the facts and the law …." Business Guides, Inc. v. Chromatic Communications Enterps., Inc., 498 U.S. 533, 551, 111 S.Ct. 922, 933, 112 L.Ed.2d 1140, 1159 (1991). Whether or not this duty has been breached depends on the objective reasonableness of the litigant's conduct under the totality of the circumstances. See id.; see also Lancellotti v. Fay, 909 F.2d 15, 18–19 (1st Cir. 1990). For purposes of Rule 9011, a pleading must be judged on the basis of what was reasonable when the pleading was filed rather than in hindsight. See Cruz v. Savage, 896 F.2d 626, 631 (1st Cir. 1990); Davis v. Crush, 862 F.2d 84, 88 (6th Cir. 1988). As the Massachusetts bankruptcy court has observed, what is "[o]bjectively reasonable" is measured by what a competent attorney admitted to practice before the court would do. Hermosilla v. Hermosilla (In re Hermosilla), 450 B.R. 276 (Bankr. D. Mass. 2011), aff'd, No. MB 11-045, 2011 WL 6034487 (B.A.P. 1st Cir. Nov. 14, 2011), accord In re Reither, No. 17-13815-JNF, 2018 WL 5310658, at *36–37 (Bankr. D. Mass. Oct. 25, 2018). To do this, the court must determine whether a "reasonable attorney in like circumstances could believe his actions to be factually and legally justified." In re Withrow, 405 B.R. at 512 (quoting Cabell v. Petty, 810 F.2d 463, 466 (4th Cir. 1987)).

Attorney Katz failed to meet his obligations under this statute – and to do what a reasonable attorney in like circumstances would do – in the Abel Case. It is undisputed he did not perform a reasonable investigation into the Debtor's circumstances prior to the bankruptcy petition being filed over his name and, notwithstanding his electronic signature on the filed documents, he had not engaged in **any** inquiry as to whether the information in the schedules filed with the petition was incorrect. Although Attorney Katz did not act in bad faith and did not intentionally violate Rule 9011, his conduct did violate Rule 9011, and sanctions are warranted under § 707(b)(4) of the Bankruptcy Code.

Based on the record before it, the Court also recognizes several mitigating factors, including, most significantly, that Attorney Katz has an unblemished record of practice, representing creditors before this Court, and he has fully explained (i) how the circumstances of this emergency case, and his engagement with the Debtor through the Synergy Defendants, unfolded; (ii) that he was motivated to

15

represent the Debtor out of concern and desire to provide meaningful legal assistance in connection with the pending foreclosure; (iii) that once he recognized the gravity of his error in joining Synergy in the representation of Mr. Abel as a Debtor in this Court, he moved to withdraw from representing the Debtor; (iv) once he realized the damage he had caused by allowing the Synergy Defendants to use his CM/ECF credentials, he changed his user name and password to prevent them from further use thereof; (v) the steps he has taken to mitigate the damage he caused in this case; and (vi) his regret for his failure to comply with the applicable statutes, rules and procedures of this Court – and the corresponding standards of ethical and professional conduct – with a sincere apology. The Court is also persuaded Attorney Katz's remorse is sincere, his intention never to represent debtors in bankruptcy cases is credible, monetary sanctions are not necessary in order to deter Attorney Katz from engaging in similar misconduct in the future, and, in light of the unique conduct at issue here, monetary sanctions are not necessary to deter other attorneys from engaging in similar misconduct in this District.

In light of Attorney Katz's appropriate expression of shame and regret for his conduct, the public nature of all proceedings in the Abel Case (and particularly the availability of the audio record of all hearings related to it), no further sanctions are necessary to deter Attorney Katz from engaging in similar conduct in the future, and the sanction, while punitive, should be rehabilitative and compensatory in its focus. Therefore, the Court will impose a sanction that includes a component aimed at advancing Attorney Katz's understanding of his ethical obligations and provides an opportunity for him to utilize his extensive legal skills to give back to the public in the area of law he knows best, specifically benefitting parties who might not otherwise be able to afford legal representation. As the sanction, Attorney Katz shall be required to:

(1) perform ten (10) hours of *pro bono* legal service, through Legal Services Vermont,
(2) attend eight (8) hours of continuing legal education focused on legal ethics, and
(3) file an affidavit in this Court affirming he has completed both, by December 31, 2020.

### V. CONCLUSION

For the reasons articulated above, the Court grants judgment in favor of the U.S. trustee, against Attorney Katz, in the form of sanctions that include mandatory *pro bono* legal service, targeted legal education, and the reprimand set forth in this memorandum of decision. This sanction represents a balancing of the nature and severity of Attorney Katz's misconduct, the lack of actual damage his misconduct caused to the Debtor, the absence of an intent to harm, the several applicable mitigating factors, the absence of any aggravating factors, and Attorney Katz's apology and remedial actions.

This constitutes the Court's findings of fact and conclusions of law.

September 27, 2019                                                                    Colleen A. Brown
Burlington, Vermont                                           United States Bankruptcy Judge